■ BANK LEUMI TRUST COMPANY OF NEW YORK, Respondent, v LUCKEY PLATT CENTRE ASSOCIATES, a Partnership, Also Known as LUCKEY PLATT CENTRE ASSOCIATES, Appellant, et al., Defendants. (And a Third-Party Action.) [665 NYS2d 976] —Carpinello, J. Appeal from an order of the Supreme Court (Connor, J.), entered January 6, 1997 in Ulster County, which, *inter alia*, granted plaintiff's cross motion for summary judgment.

The origin of the instant dispute dates back to more friendly times when the principal antagonists, Amos Burstin and Nachum Kalka, were growing up together as teenagers in Israel in the 1950s. As adults, these two renewed their relationship in New York City in the early 1980s. At that time Kalka, a real estate developer, and Burstin, an attorney with business interests in Bogota, Columbia, decided to invest together in real estate in this State. Their original concept was to renovate and lease the Luckey Platt Building located in the City of Poughkeepsie, Dutchess County. In addition to acquiring the Luckey Platt Building, the partnership soon broadened its horizons and began to develop a 104-lot residential subdivision in the Town of Lloyd, Ulster County, known as Hudson Hills.

To implement this plan, a limited partnership was formed—defendant Luckey Platt Centre Associates (hereinafter defendant). A Kalka-controlled entity was defendant's general partner and a Burstin-controlled entity, Burstin Investors, Inc., was its sole limited partner. All of the capital contributions and loans to the partnership, exclusive of bank financing, were made by Burstin. Kalka was to provide his management and construction skills and was responsible for day-to-day supervision of the partnership projects. Before the relationship totally deteriorated, Burstin had invested a total of $3,540,000.

Suffice it to say that Burstin's trust in his childhood friend was misplaced. The full extent of Burstin's travails is set forth

in painful detail in the 44-page findings of fact and conclusions of law rendered in 1996 by Supreme Court (Beisner, J.) following a nonjury trial between Burstin Investors, as the plaintiff, and Kalka and his controlled corporations, as the defendants (hereinafter the Dutchess County action). In that action, Burstin Investors prevailed on practically all of its allegations of fraud, breach of contract, waste, negligence and gross negligence arising out of Kalka's mismanagement of the partnership. In awarding a judgment in excess of $8,000,000 against Kalka, the court found that Kalka was a "prevaricator and conman" who had "permitted fraudulent and criminal events to occur" during his period of partnership control including, but not limited to, delegating the daily oversight of the Hudson Hills project to a convicted felon. As a result of Supreme Court's decision in the Dutchess County action, Kalka was divested and Burstin was granted control of defendant.

While defendant spends considerable time on this appeal recounting Kalka's many transgressions, the issue presently before this Court is whether plaintiff is entitled to foreclose its first mortgage on defendant's realty. To forestall foreclosure, defendant has interposed numerous affirmative defenses and counterclaims, all relating to an alleged conspiracy between Kalka and plaintiff to divest Burstin Investors of control of the partnership realty and thereby allowing Kalka to reacquire same through foreclosure. Supreme Court (Connor, J.) granted plaintiff's cross motion for summary judgment and dismissed defendant's affirmative defenses and counterclaims. On appeal, defendant argues that Supreme Court "refus[ed] to understand the relationship between Kalka and [the] Bank", ignored evidence of Kalka's scheme to enlist plaintiff as a coconspirator and improperly deprived it of any opportunity for discovery.

To the contrary, however, our review of the record establishes the fact that all nonpriviledged internal bank documentation relating to the subject loan relationship was previously provided to defendant in proceedings supplemental to the Dutchess County action. In addition, defendant extensively deposed plaintiff's loan officer in the context of the partnership's first bankruptcy proceeding.* As we find that defendant's allegations of conspiracy consist of nothing more than conjecture and surmise (see, *Gateway State Bank v Shangri-La Private*

---

* Defendant, now controlled by Burstin, filed a bankruptcy petition in May 1996, which was the second of two bankruptcy petitions filed by defendant since its formation (the first, filed in July 1994, was dismissed in 1995). The instant foreclosure action proceeds by virtue of a Bankruptcy Court order permitting same.

*Club for Women,* 113 AD2d 791, *affd* 67 NY2d 627) and because defendant has failed to offer any evidentiary proof to support its claim that facts essential to justify opposition to the motion for summary judgment may exist, but could not then be stated (*see,* CPLR 3212 [f]; *Ramesar v State of New York,* 224 AD2d 757, 759, *lv denied* 88 NY2d 811), we affirm.

Significantly, at no point does defendant contest the existence of the loan documents, the validity of the mortgage lien, the amount of the indebtedness or the fact that the loan is currently in default. Quite unabashedly, it argues that plaintiff should be "tarred with the same brush" as Kalka, even though plaintiff's principal transgression appears to be that it "made substantial sums in interest and fees stemming from [the loan]". In its attempt to buttress its conspiracy theory, defendant points to three principal areas of plaintiff's purported culpability.

The first indication of the alleged conspiracy relates to a 1991 refinancing of the mortgage debt on defendant's realty. At that time the mortgage, then held by Barclay's Bank, was in foreclosure. Plaintiff agreed to refinance the loan. Defendant ignores the fact that the Dutchess County action was already then pending and that court approval was required for the refinancing. Although we do not find that the 1991 Supreme Court order in the Dutchess County action approving the refinancing collaterally estops any issue in this case, it nonetheless required that the total amount of the indebtedness to plaintiff not exceed the amount "currently owed to Barclay's Bank, real estate taxes currently owed and liens against the partnership property". Thus, even if plaintiff's motives were suspect, a conclusion we are unwilling to draw, defendant could not have been harmed by a refinancing which essentially substituted one creditor for another.

The second indication of the alleged conspiracy arises out of defendant's first chapter 11 bankruptcy proceeding. Defendant argues that plaintiff conspired with Kalka in a proposed 1995 sham sale to a "straw man" put up by Kalka. Again, even if we were to impugn improper motives to plaintiff, all that needs be said in this regard is that the proposed sale was never approved by Bankruptcy Court. Since this "sham transaction" did not occur, it is impossible to envision how the partnership could have suffered any harm.

Lastly, defendant argues that the instant foreclosure action itself is evidence of the conspiracy because plaintiff has chosen to foreclose the mortgage, rather than to proceed only against Kalka on his guarantee. It is axiomatic that a mortgagee is

free to elect its remedy (*see, Wyoming County Bank & Trust Co. v Kiley*, 75 AD2d 477). In addition, the mere fact that the instant foreclosure action may have been initiated as a "friendly foreclosure" between plaintiff and Kalka, defendant is in no way prevented from either paying off the indebtedness (which preexisted plaintiff's involvement in the partnership affairs) or from bidding at the public foreclosure sale.

Mercure, J. P., Casey, Peters and Spain, JJ., concur. Ordered that the order is affirmed, with costs.